JOSEPH SHEPHERD AND OTHERS
vs
MARY ANN BEVANS AND OTHERS.	} DECEMBER TERM, 1850.

[LIMITATIONS—CLAIMS ALLOWED BY ORPHANS COURT—PRACTICE.]

THE act of 1849, ch. 224, suspending the operation of the act of limitations in certain cases, is prospective and not retrospective in its operation.

An instrument under seal, attested by a subscribing witness, may be proved in this state without calling such witness.

Where a claim against the personal estate is disputed by the administrator, and the Orphans Court allow a reduced amount, and both parties acquiesce, the claimant cannot as against the proceeds of the real estate, claim more than was allowed against the personal estate.

[The real estate of Mary Shepherd, deceased, who died in September, 1847, was sold under the proceedings in this case, for payment of debts and distribution amongst the parties entitled. The case was brought before the Chancellor upon exceptions to the Auditor's report and accounts. The disputed claims are those numbered 1, 2, 3, 4, 5 and 6.

Claim No. 1, preferred by Joseph Shepherd consists of an open account against the deceased, commencing in April, 1846, and ending in December, 1847, on which was a balance due with interest of $228 59, and was filed on the 19th of September, 1849. The first item is a charge of $65, for building an overseer's house; the 2d "for cash lent, $120 49, and interest thereon, $10 54;" the 3d, for building and getting out frame of corn house, $50; the 4th, for a cart body, $9. Then follows a credit of $36 04, for 53 bushels of wheat. The statute of limitations was pleaded to the three first items, they having accrued by the 10th of July, 1846, and it was further objected that the whole claim was not proved. The proof in its support is stated in the opinion of the Chancellor, and was ample except as to the 4th item, of which there was no proof. As to the plea of limitations, it was proved by James Owens, Sen., that within a month before her death the deceased said she owed Joseph, the claimant, a good deal of money. It was also insisted that the act of 1849, ch. 224, was retrospective in its operation and applied to this claim, so as to save it from the operation of the statute.

Claim No. 2, was a single bill for $170 77, dated the 17th of February, 1844, payable to Joseph Shepherd, and purporting to be signed by the deceased, by her mark thereto, and witnessed by Susan Shepherd, who was one of the complainants in the cause. To this *non est factum* was pleaded, and it was also objected that it was not proved. The proof is stated by the Chancellor.

34*

Claims Nos. 3 and 5, were preferred by Elizabeth and Susan Shepherd. They consist of two accounts against the deceased, by each of the claimants, exactly alike in every particular. They each charge the deceased with the hire of a negro woman from the 1st January, 1832, to the 1st of January 1848, at $20 per annum, $320, and cash lent at sundry times $93. When these claims were preferred against the personal estate in the Orphans Court, they were disputed by the administrator, and that court passed them for only $75, and it was insisted that the decision of that court standing unreversed, concludes these claimants. It is a decision on the *primary* fund for the payment of debts, in which the representative of the personalty, who holds all the vouchers and other proofs of the estate was the defendant, and is a judgment concluding the claimants as to all *secondary* funds which may be pursued by them, as much as a judgment at law against the claim where the administrator was defendant at the claimant's suit would bar any proceeding against the heir. It was also objected that these claims were barred by limitations except as to the last three years of the hire of the servant, and were not proved.

Claims Nos. 4 and 6, were two single bills, executed by the deceased, the one for $530 09, in favor of Susan Shepherd, and dated the 14th of September, 1845, the other for $810 79, in favor of Elizabeth Shepherd, and dated the 29th of October, 1840. These claims constituted the claims upon which the bill was filed for the sale of the real estate.

Upon these several claims and exceptions thereto, the Chancellor delivered the following opinion.]

THE CHANCELLOR:

I have considered the exceptions to the report of the Auditor and carefully read the evidence and arguments of the counsel of the parties, and am of opinion.

1st. That claim No. 1, *exhibit* A., is proved, except with reference to the 4th item thereof, and with the further exception that the charge for building the overseer's house should be reduced to $60, according to the proof of James Owens, Sen.

And I am also of opinion, that the record contains sufficient evidence to exempt this claim from the plea of limitations. I place the exception upon the proof and not upon the act of 1849, ch. 224, which I regard as prospective.

2d. I do not think claim No. 2, exhibit B., has been sufficiently proved in opposition to the plea of *non est factum*. The execution of the paper by the alleged debtor, might be proved without calling the subscribing witness under our act of Assembly, but in this case, such execution is not proved at all, and the claim must be rejected.

3d. As to claims numbered 3 and 5, I am of opinion, the claimants cannot, as against the real estate claim more than they were allowed against the personal estate. Suppose, instead of a reduction of the claim in the Orphans Court, and in a contest with the personal representative, the entire demand had been defeated and the creditor had acquiesced in the result, could he afterwards set up the same claim as against the real estate? I apprehend he could not. The personal representative of the deceased debtor, in whose hands are supposed to be the papers and vouchers of the deceased, is the person selected by the law to carry on these controversies, and if a claimant is defeated, wholly or partially, in such a controversy, it appears to me, he should not afterwards be permitted to renew the contest with those not so well prepared to make a defence. It is said the administrator was not bound to pay, though the Orphans Court passed the claim in part, and this is true. Neither was the creditor bound to acquiesce in the judgment of that court, nor to receive his dividend, but as both parties have thought proper to acquiesce, the question is, whether the creditor can be suffered to litigate the same matter again with parties who have not the custody of the papers of the deceased, and consequently are less competent to defend themselves. It is admitted, there is no proof in support of the cash items contained in these accounts, and there is, moreover, upon their face a concurrence and coincidence of amounts, both as to the value of the negro hire and the amount of the cash lent which is rather remarkable. My opinion, then, is, that they can be allowed for no more than was allowed in the Orphans Court. It is, I think, no answer to say,

the heirs were not bound by the decision of that court. They were not bound because not parties to the controversy there, but the claimants were parties and ought to be bound.

4th. Claims Nos. 4 and 6, are established by the decree, and are to be allowed.

5th. The exceptions to claims numbered 7 and 8, being abandoned, they will be allowed. In fact, these claims appear to be fully established.

A. RANDALL, for Bevans.
McLEAN, for Shepherd.